## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **3:24-cr-000170** |
| | **:** | **(Judge Mannion)** |
| | **:** | |
| **JOSE R. RODRIGUEZ** | **:** | **(Electronically Filed)** |

## BRIEF IN SUPPORT OF
## MOTION TO SUPPRESS

**Matthew L. Clemente, Esq.**
88 N. Franklin Street, 2nd Floor.
Wilkes-Barre, PA 18701
570-266-8986 (p)
570-392-6968 (f)
mc@mclementelaw.com

*Attorney for Jose R. Rodriguez*

# TABLE OF CONTENTS

Introduction ................................................................................ 1

Background ................................................................................ 4

    A.  Procedural History ............................................................ 4

    B.  State Court Investigation ................................................ 4

    C.  Search Warrant Application ............................................ 6

Question Presented ................................................................ 11

Applicable Law ...................................................................... 11

    A.  Probable Cause / Review of Search Warrants ............... 12

    B.  Overbreadth / Particularity ............................................ 14

Argument ................................................................................ 15

    A.  No Probable Cause of Crime .......................................... 15

    B.  No Particularity .............................................................. 17

Conclusion .............................................................................. 19

CERTIFICATE OF SERVICE ................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Florida v. Jardines*, 569 U.S. 1, 6 (2013) ...................................................11

*Florida. v. Harris*, 568 U.S. 237, 249 (2013)...........................................13

*Illinois v. Gates*, 462 U.S. 213, 236 (1983) ..............................................12

*United States v. Griffith* ...................................................................13, 14

*United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007).....................13

*United States v. Outlaw*, No. 24-2114, 138 F.4th 725, 2025 U.S. App. LEXIS 12885, at *1 (3d Cir. May 28, 2025). .............................2, 15, 16

*United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002)......12, 13

## Statutes

18 U.S.C. § 922(g) ......................................................................................4

26 U.S.C. § 5861(d) ....................................................................................4

## Constitutional Provisions

U.S. Const. amend. IV.......................................................................11, 13

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | |
| | : | **3:24-cr-000170** |
| | : | **(Judge Mannion)** |
| | : | |
| **JOSE R. RODRIGUEZ** | : | **(Electronically Filed)** |

<u>**BRIEF IN SUPPORT OF
MOTION TO SUPPRESS**</u>

Defendant, Jose R. Rodriguez, by his attorney, Matthew L. Clemente, Esq., files the following Brief in Support of Motion to Suppress.

<u>**Introduction**</u>

This case involves a lack of investigation, a lack of probable cause, and an overly broad search warrant that was improvidently granted.

Luzerne County Drug Task Force Detective William Patton ("Detective Patton") submitted a search warrant application with few facts, several assumptions, and countless unanswered questions. (*See generally* Search Warrant, Application, and Affidavit of Probable Cause, collectively Defendant's Exhibit (Def. Ex. 1, attached). To make matters worse, Patton's affidavit discusses firearm parts allegedly

manufactured by a 3D printer without any explanation of: (1) what a 3D printer is, (2) how a 3D printer works, (3) what his training and experience is relating to 3D printed firearms, and (4) why law enforcement believed certain objects recovered were produced by a 3D printer.

Perhaps most fatal to his search warrant application was that any suspicion of criminal activity Detective Patton may have had was not particularized to Jose Rodriguez ("Mr. Rodriguez") as required by the Fourth Amendment. *See United States v. Outlaw*, No. 24-2114, 138 F.4th 725, 2025 U.S. App. LEXIS 12885, at *1 (3d Cir. May 28, 2025). According to Patton's affidavit of probable cause, there were facts to suggest that someone residing at 106 George Avenue, First Floor, Wilkes-Barre, Pennsylvania, may be manufacturing firearms. Based on his minimal investigation, Patton learned that at least two individuals reside at 106 George Avenue, Carmen Garcia ("Ms. Garcia") and Mr. Rodriguez. Detective Patton learned that Mr. Rodriguez had a criminal history that would preclude him from owning firearms, but that Ms. Garcia did not.

As a result, follow up investigation was necessary to determine: (1) whether Mr. Rodriguez, and not Ms. Garcia, was ordering gun parts, (2) whether Mr. Rodriguez, and not Ms. Garcia, was attempting to assemble guns, (3) whether Mr. Rodriguez, and not Ms. Garcia, ever succeeded in creating an operable firearm, as Patton alleged, (4) whether Mr. Rodriguez, and not Ms. Garcia, ever assembled an operable firearm at 106 George Avenue (as opposed to some other location), and (5) whether evidence of firearms or firearm production would be found at 106 George Avenue at the time of the search warrant.

From the few factual allegations contained in his affidavit of probable cause (and despite the several significant unsupported factual assumption indicated above), Detective Patton concluded that based on his "training and experience," which again is not articulated as it relates to 3D printed firearms, or ghost guns, that "their [sic] is probable cause to believe [Mr. Rodriguez] is possessing [sic] and manufacturing firearms at his residence 106 George Avenue 1st Floor, Wilkes-Barre, PA 18705." Based on his barebones affidavit, Detective Patton sought and obtained authorization to seize a broad range of items, including:

3D Printers, any computer units to include smart phones able to be connected to a 3D printer, any firearms, any firearm parts, any firearm ammunition, any paperwork connected to firearms or firearm parts, any firearm related equipment able to be connected to a firearm i.e.; suppressor muzzle break, any electronic storage devices able to store data regarding the manufacturing of firearms.

Given all of these unknowns and the lack of factual allegations contained in the search warrant application, the Court should find that the search warrant application was factually insufficient and Detective Patton's reliance upon it was objectively unreasonable. Accordingly, the Court should grant Mr. Rodriguez's motion to suppress.

## **Background**

### A. Procedural History

On July 9, 2024, Mr. Rodriguez was charged via Indictment (Doc. 1) with one count of knowingly and unlawfully possessing an unregistered firearm silencer (26 U.S.C. § 5861(d)) and one count of knowingly possessing a firearm and ammunition subsequent conviction of a crime punishable by imprisonment for a term exceeding one year (18 U.S.C. § 922(g)).

### B. State Court Investigation

This case arose from a state court investigation in Luzerne County, Pennsylvania. According to Detective Patton's police report

4

(Exhibit 2, attached), an employee at Carriage Stop Plaza ("Carriage Stop"), a gas station / convenience store in Plains Township, Pennsylvania, found a bag of gun parts outside of a garbage can. (RODRIGUEZ000096). The employee subsequently contacted the Plains Township Police Department ("Plains PD").  Patrolman Saif Mahmoud ("Patrolman Mahoud") responded to the Carriage Stop and recovered the gun parts and some invoices and shipping labels.

These invoices and shipping labels were addressed to 106 George Avenue, Wilkes-Barre, Pennsylvania. Some were addressed to Mr. Rodriguez. Some were addressed to Ms. Garcia. Some had an address with no recipient listed. On March 4, 2024, Plains PD Detective Timothy Minnick ("Detective Minnick") contacted Detective Patton, who reviewed the items recovered by Plains PD. Detective Patton reviewed "an invoice for a Glock model 17 9mm 17 round polymer magazine" and "an invoice Smith & Wesson Sd9ve complete lower parts repair kit," which was shipped to *Carmen Garcia*. (*Id.* at RODRIGUEZ000097; *see also* Def. Ex. 1 at RODRIGUEZ000107).

Detective Patton then travelled to 106 George Avenue, Wilkes-Barre, Pennsylvania, a three story, multifamily unit, where he

photographed a vehicle registered to Mr. Rodriguez. Detective Patton conducted criminal history and background searches of both Mr. Rodriguez and Ms. Garcia. Detective Patton found that Mr. Rodriguez had a criminal history that would preclude him from possessing a firearm and that Ms. Garcia had no criminal history.

Also on March 4, 2025, Detective Minnick travelled to the Carriage Stop Plaza to speak with employees about the strewn garbage found on March 2, 2024. The employees reported viewing video of an unknown woman removing the bags with the gun parts and placing them on the ground. Prior to seeking a search warrant, it does not appear that any video of an individual placing the gun parts *in* the garbage was recovered or reviewed.

### C. Search Warrant Application

Boiled down to its essence, Detective Patton's affidavit alleges only the following factual allegations:

(1) An employee of a gas station found gun parts outside a garbage can and called the police.

(2) The responding officer believed that the gun parts "appeared to have been printed by a 3D printer[.]"

(3) In addition to the gun parts, police recovered shipping labels and invoices addressed to 106 George Avenue, First Floor, Wilkes-Barre, Pennsylvania.

(4) Some of the shipping labels and invoices were addressed to Mr. Rodriguez. Some were addressed to Ms. Garcia. Some had an address with no recipient listed.

(5) The only invoice for gun parts was addressed to Ms. Garcia.

(6) 106 George Avenue, Wilkes-Barre, Pennsylvania, is a three story, multifamily unit.

(7) Background checks revealed that both Ms. Garcia and Mr. Rodriguez both reside at 106 George Avenue.

(8) Ms. Garia has no criminal history.

(9) Mr. Rodriguez has a criminal history and is precluded from possessing or manufacturing a firearm under Pennsylvania law.

(10) No law enforcement attempted to interview Ms. Garcia or Mr. Rodriguez or conduct any other investigation to determine whether Mr. Rodriguez or Ms. Garcia purchased gun parts, or attempted to manufacture, manufactured, or possessed firearms.

(11) No law enforcement conducted any investigation to determine the relationship between Mr. Rodriguez and Ms. Garcia, aside from being co-residents of 106 George Avenue, First Floor, or whether anyone else resided at that address.

Largely based upon the information above, Detective Patton sought and obtained a search warrant for Mr. Rodriguez' residence. *See* Ex. 1.

However, the search warrant application relies on several unsupported assumptions and contains several significant abnormalities. Concerning the unsupported assumptions, Patton assumes:

(1) Despite the only invoice recovered regarding gun parts (according to Detective Patton's affidavit) being addressed to Ms. Garcia, Mr. Rodriguez was the one ordering gun parts.

(2) Despite no investigation as to their relationship, Ms. Garcia was anything other than a roommate to Mr. Rodriguez.

(3) Despite no explanation of how 3D printers work or the difficulty of assembling 3D printed firearms, Mr. Rodriguez, and not Ms. Garcia, succeeded in creating an operable firearm as Detective Patton alleged.

(4) Despite no investigation or supporting facts, Mr. Rodriguez, and not Ms. Garcia, successfully assembled an operable firearm *at a common area of the first floor of 106 George Avenue* (as opposed to some other location).

(5) Despite no investigation or supporting facts, and despite the fact that the invoices and shipping labels recovered included dates from months prior, evidence of firearms or

firearm production would be found at 106 George Avenue
at the time of the search warrant.

Regarding the significant abnormalities contained in Detective

Patton's affidavit, the search warrant application in this case does not

include a relevant recitation of the officers' training and experience or

the necessary explanation of technical information that would go

beyond the knowledge of a lay reader. Although the application avers

that the gun parts recovered "appeared to have been printed by a 3D

printer," according to the responding officer, Plains PD Patrolman

Mahmoud, there is no explanation of the basis of Patrolman Mahmoud's

belief. There is no recitation of Patrolman Mahmoud's training and

experience with firearms or with 3D printed objects. *See*

RODRIGUEZ000107.

Similarly, Detective Patton begins his affidavit of probable cause

with his training and experience search warrants and firearm

trafficking investigations, but there is no indication that he has any

training or experience with 3D printers, 3D printed objects, or 3D

printed firearms. There is no explanation of what 3D printers are, how

they work, or whether it is possible for a lay person to create a firearm

with a 3D printer. These are all important background facts and

9

qualifications that are typical in most affidavits of probable cause but are curiously absent here.

Second, there is no indication that Detective Patton or any other law enforcement contacted any of the companies or individuals listed on the shipping labels to see if Mr. Rodriguez was purchasing firearms or firearm parts.

Third, there is no indication of *when* the items were purchased or manufactured.

Fourth, there is no indication that law enforcement spoke to the employees of the Carriage Stop to determine how long the firearm parts were in or could have been in the garbage can, i.e. how regularly was that garbage can emptied.

Finally, there appears to be a crucial typographical error. Perhaps acknowledging the limitations to his training and experience, it appears that Detective Patton contacted "Task Force Officer Jeff Ference ("Officer Ference") of the Bureau of Alcohol, Tobacco and Firearms (ATF)," presumably to review the evidence. Presumably, Officer Ferrence had training and expertise concerning firearms (and possible 3D printed firearms) that went beyond Detective Patton's training and

expertise. Presumably, Detective Patton intended to supplement his search warrant affidavit by adding Officer Ference's review and his opinions about the evidence recovered.

However, Detective Patton's affidavit does not include any of this supplemental information. The paragraph referencing Officer Ferrence contains a glaring typographical error, a substantial omission, and is ultimately meaningless as it is written.


## Question Presented

Whether the search warrant application for Mr. Rodriguez's residence violated the Fourth Amendment, and whether any property seized and any fruits derived from the seizures should be suppressed?

[*Suggested Answer: YES.*]

## Applicable Law

The Fourth Amendment of the United States Constitution protects against "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment requires search warrants to be supported by "probable cause" and to "particularly describe[e] the place to be search" and "things to be seized."

The Supreme Court has stated that "when it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines*, 569

U.S. 1, 6 (2013). "At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Id*. (quoting Silverman v. *United States*, 365 U.S. 505, 511 (1961)).

## A. Probable Cause / Review of Search Warrants

In order to establish probable cause, an officer must establish "a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (internal quotations, ellipses, and brackets omitted). In evaluating the magistrate judge's finding of probable cause, district courts should defer to the magistrate judge's judgment. *Id*.  "This, however, does not mean that reviewing courts should simply rubber stamp a magistrate's conclusion." *United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002) (internal quotations omitted). For example, the magistrate judge cannot rely upon a "wholly conclusory statement" by the affiant, as such a statement "gives the magistrate virtually no basis at all for making a judgment regarding probable cause." *Gates*, 462 U.S. at 239. Instead, "courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued," and evaluate whether the

12

magistrate judge had a "substantial basis" for concluding probable cause existed justifying the issuance of a warrant. *Id*.

One factor the court must consider in evaluating whether probable cause exists is the age of the information. *Zimmerman*, 277 F.3d at 434. "If too old, the information is stale, and probable cause may no longer exist." *Id*.

Of course, probable cause must be measured "with reference to the facts and circumstances within the officer's knowledge at the time of the investigative stop or arrest," or in the case search warrant application. *United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007). This determination –whether there was probable cause at the time of the search warrant application – cannot be "in hindsight, based on what a search does or does not turn up." *See Florida. v. Harris*, 568 U.S. 237, 249 (2013). In short, in evaluating a search warrant application, the Court must only consider the four corners of the affidavit. *Zimmerman*, 277 F.3d at 430 n.3 ("We, of course, must confine ourselves to the facts that were before the issuing magistrate -- in other words, the affidavit.")

### B. Overbreadth / Particularity

In addition to requiring probable cause, the Fourth Amendment requires that search warrants "particularly describe[e] the place to be search[ed]" and "things to be seized."

In *United States v. Griffith*, the District of Columbia Court of Appeals summarized the purpose of the particularity requirement:

> That condition "ensures that the search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Garrison*, 480 U.S. at 84, 107 S.Ct. 1013. Consequently, a warrant with an "indiscriminate sweep" is "constitutionally intolerable." *Stanford v. Texas*, 379 U.S. 476, 486, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). We will hold a warrant invalid when "overly broad." *United States v. Maxwell*, 920 F.2d 1028, 1033-34 (D.C. Cir. 1990).
>
> [15]In obligating officers to describe the items to be seized with particularity, the Fourth Amendment prevents "the issu[ance] of warrants on loose, vague or doubtful bases of fact." *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 357, 51 S.Ct. 153, 75 L.Ed. 374 (1931). In that way, "the requirement of particularity is closely tied to the requirement of probable cause." 2 LaFave, *Search & Seizure* § 4.6(a). When a warrant describes the objects of the search in unduly "general terms," it "raises the possibility that there does not exist a showing of probable cause to justify a search for them." *Id.* § 4.6(d).

867 F.3d 1265, 1275-76 (D.C. Cir. 2017).

14

## Argument
### A. No Probable Cause of Crime

Here, there was simply not a substantial basis to conclude that a search of 106 George Avenue, First Floor, Wilkes-Barre, Pennsylvania, would contain evidence of wrongdoing. The search warrant application lacked probable cause for a host of reasons as set forth above.[1]

To briefly summarize, the police had a few discrete pieces of information that they determined to be suspicious. However, they did nothing to investigate or substantiate their suspicions. In fact, the only investigation Detective Patton initiated called into question whether a crime had been committed. Detective Patton's minimal investigation revealed that there were *two* residents of 106 George Avenue, one who could lawfully possess weapons (Ms. Garcia) and one who could not (Mr. Rodriguez). In fact, the only invoice concerning firearms (included in the search warrant application) was addressed to Ms. Garcia. (Def. Ex. 1 at RODRIGUEZ000107) ("Also recovered was an invoice for a Smith &

---

[1] For the sake of brevity, Mr. Rodriguez will not reiterate each of the unsupported assumptions and significant abnormalities contained in Detective Patton's affidavit. (See Section II.C, *supra*). Instead, Mr. Rodriguez seeks here to develop two points.

Wesson Sd9ve complete lower parts repair kit. This was shipped to CARMEN GARCIA[.]")

The recent case of *United States v. Outlaw*, 138 F.4th 725 (3d Cir. May 28, 2025) is instructive here. While dealing with different facts, the legal principle in that case governs here: where police have potentially incriminating evidence involving two individuals, there must be particularized suspicion for a particular individual to establish probable cause. *Outlaw* involved the odor of marijuana in a vehicle where there were multiple passengers. 138 F.4th 725, 2025 U.S. App. LEXIS 12885, at *5-*7. The Court concluded "where, as here, there are multiple individuals within the vicinity of the smell, there is not probable cause of marijuana possession particularized to any one person absent additional facts." *Id*. at *7.

This logic applies here as well. Here, Detective Patton's suspicions were not particularized to Mr. Rodriguez. There was another individual involved, Ms. Garcia. It was not a crime for her to possess firearms. The scant information Detective Patton obtained indicated that it was Ms. Garcia who was obtaining gun parts and possibly manufacturing

firearms. (Def. Ex. 1 at RODRIGUEZ000107). Accordingly, Detective Patton's affidavit clearly lacked probable cause on this basis alone.

Secondarily, Detective Patton's affidavit left out a significant fact. Despite discovering the gun parts and documents in March 2024, the shipping labels and invoices were from January. (*See e.g.,* Def. Exs. 4-5). Detective Patton intentionally omitted that the shipping labels and invoices were from *weeks* earlier. Given the dates of the shipping labels and invoices, Detective Patton should have taken some measures to ensure that the scant information he had was not stale. Again, he did not conduct any investigation. Why should a magistrate assume based on gun parts ordered in January and found in a gas station garbage can in March that there would be evidence of a crime at 106 George Avenue weeks later? This is another significant, unsupported assumption.

In sum, Detective Patton's affidavit manifestly lacked probable cause.

### B. No Particularity

In addition to lacking probable cause, Detective Patton's affidavit violates the particularity requirement of the Fourth Amendment.

Detective Patton's search warrant application sought to seize:

17

3D Printers, any computer units to include smart phones able to be connected to a 3D printer, any firearms, any firearm parts, any firearm ammunition, any paperwork connected to firearms or firearm parts, any firearm related equipment able to be connected to a firearm ie; suppressor muzzle break, any electronic storage devices able to store data regarding the manufacturing of firearms.

(Def. Ex. 1 at RODRIGUEZ000111).

As a result of the search of Mr. Rodriguez' residence a host of items were seized. (Def. Ex. 6, Search Warrant Inventory). The items seized included items that went beyond the scope of the warrant, including a "fired upon target" (Item 3), "cripto currency (*sic*)" (Item 22), and "various ID's" (Item 26).

The police also seized items for which there was plainly not probable cause. These include: a 3D printer (Item 18), a Dell laptop (Item 19), various hard drives and thumb drives (Item 23 and 24), and two cell phones (Item 40).

First, there was no evidence at the time of the search warrant application that Mr. Rodriguez owned a 3D printer, laptop, hard drives or thumb drives or any cell phones. Second, there is no indication who these items belonged to. The search warrant did not authorize the seizure of Ms. Garcia's property. Third, there was no explanation of

18

what a 3D printer is or why police believed the guns were 3D printed. Finally, there was no information to suggest that these items, if they existed and were used for illegal purposes, would still be located at 106 George Avenue.

As a result, the search warrant application in this case is also unconstitutional insofar as it is overly broad.

## Conclusion

Mr. Rodriguez respectfully requests that this Honorable Court grant his motion and suppress the search of his residence and all fruits thereof.

Respectfully Submitted,

/s/ Matthew L. Clemente, Esq.
88 N. Franklin Street, 2nd Floor.
Wilkes-Barre, PA 18701

*Attorney for Mr. Rodriguez*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | |
| | : | 3:23-cr-000294-2 |
| | : | (Judge Mannion) |
| | : | |
| JOSE R. RODRIGUEZ | : | (Electronically Filed) |

## <u>CERTIFICATE OF SERVICE</u>

I, MATTHEW L. CLEMENTE, ESQ., do hereby certify that this document, the foregoing Brief in Support of Motion to Suppress, filed electronically through the ECF system, will be sent to the registered Participants as identified on the Notice of Electronic Filing, including the following:

Jenny Roberts, Esquire
Assistant United States Attorney.

Respectfully Submitted,

/s/ Matthew L. Clemente, Esq.
88 N. Franklin Street, 2nd Floor.
Wilkes-Barre, PA 18701
 (570) 266-8986

*Attorney for Mr. Rodriguez*

20