# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 3:24-170** |
| **JOSE R. RODRIGUEZ,** | : | **(JUDGE MANNION)** |
| **Defendant** | : | |

## MEMORANDUM

Pending before the court is Defendant Jose R. Rodriguez's (hereinafter "Defendant") motion to suppress evidence, (**Doc. 42**), seized during the execution of a search warrant at his residence on March 2, 2024. Defendant faces two charges: one count of possession of an unregistered firearm, in violation of 26 U.S.C. §5861(d), and one count of possessing a firearm and ammunition as a prohibited person, in violation of 18 U.S.C. §922(g). (Doc. 1). In support of his instant motion to suppress, Defendant argues that the search warrant application lacked probable cause, and that the detective's affidavit of probable cause violated the particularity requirement of the Fourth Amendment. (Doc. 43). In response, the Government argues that both the probable cause and particularity requirements were met, and to the extent the court finds otherwise, the good faith exception applies. (Doc. 56).

For the foregoing reasons, Defendant's motion will be **DENIED** without the need for an evidentiary hearing.

## I.    BACKGROUND

This case arises from an investigation in Luzerne County, Pennsylvania. On March 2, 2024, an employee at Carriage Stop Plaza, a gas station and convenience store in Plains Township, Pennsylvania, contacted the Plains Township Police Department regarding bags of gun parts allegedly found in the garbage outside the plaza. (Doc. 43-2). According to the police report of Det. William Patton of the Luzerne County Drug Task Force ("LCDTF"), Patrolman Saif Mahmoud recovered the bags and found that they contained gun parts and shipping tags, each addressed to Defendant or his home address. *Id.* Patrolman Mahmoud believed the gun parts to be 3D printed. *Id.*  After bringing those items to the police station, officers, including Det. Patton, investigated Defendant pursuant to the seized items. *Id.* They recovered an invoice for a Glock model 17 9mm 17-round polymer magazine. *Id.* The invoice did not list a recipient, but the delivery and billing address was 106 George Avenue, 1st Floor, Wilkes-Barre, PA 18705. *Id.* Officers also found an invoice for a Smith & Wesson Sd9ve complete lower parts repair kit, addressed to Defendant's wife at 106 George Ave. *Id.* Det. Patton opined that "many of these gun parts looked to have been manipulated in a way to have been assembled into an operable firearm." *Id.*

Det. Patton surveilled 106 George Ave. and found that a vehicle parked outside the residence was registered to Defendant. *Id.* Det. Patton then conducted a background investigation and criminal history check, which revealed Defendant's multiple felony convictions for offenses related to drug trafficking, assaulting a police officer, and firearms. *Id.*

Two days later, on March 4, 2024, Det. Patton applied for and obtained a search warrant for 106 George Ave. (Doc. 56-2). In his application, Det. Patton included the above information and a description of his relevant experience. *Id.* The warrant authorized the seizure of:

> 3D Printers, any computer units to include smart phones able to be connected to a 3D printer, any firearms, any firearm parts, any firearm ammunition, any paperwork connected to firearms or firearm parts, any firearm related equipment able to be connected to a firearm ie; [sic] suppressor muzzle break, any electronic storage devices able to store data regarding the manufacturing of firearms.

*Id.* at 6.

The next morning, on March 5, 2024, police executed the search warrant on Defendant's residence and seized:

> 2 3D printers . . . one new in the box and another out and usable. Also recovered were numerous firearms parts to include slides, magazines, a barrel, and many other parts for both pistols and AR-15 rifles. 9 pistol lower receivers and an

- 3 -

AR-15 lower receiver were also recovered. 50 rounds 9mm ammunition was also recovered with the gun parts and near the printers. A used target for shooting was also recovered in the vicinity of the gun parts and the ammunition.

*Id.* Officers then arrested Defendant, who admitted to 3D printing gun parts and buying other parts needed to make fully functional firearms. *Id.*

Following his arrest, Defendant was indicted on July 9, 2024. (Doc. 1). The indictment alleges that Defendant "did knowingly and unlawfully possess a firearm, that is, a firearm silencer, not registered to him in the National Firearms Registration and Transfer Record. In violation of Title 26, United States Code, Sections 5841, 5861(d), and 5871" and that he "knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm and ammunition, to wit, a Geisler Defense brand model 1917 pistol frame and 9mm ammunition and said firearm and ammunition having been shipped and transported in interstate and foreign commerce. In violation of Title 18, United States Code, Section 922(g)(1)." *Id.*

Defendant filed the instant motion on July 2, 2025. (Doc. 42). The Government filed its brief in opposition on August 15, 2025. (Doc. 56). Defendant filed a reply brief on September 23, 2025. (Doc. 64). Defendant's motion is now ripe for review.

## II.    LEGAL STANDARD

The Fourth Amendment generally requires police to secure a warrant supported by probable cause before conducting a search, unless a recognized exception to the warrant requirement exists. *Lange v. California*, 594 U.S. 295 (2021).

Protection against unreasonable searches and seizures is enshrined in the Fourth Amendment, which states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

"The Fourth Amendment, like the other Amendments contained in the Bill of Rights, imposes direct limitations on the actions that may be taken by the Federal Government." *Adams v.* Springmeyer, 17 F.Supp.3d 478, 490 (W.D.Pa. 2014) (citing *McDonald v. City of* Chicago, 561 U.S. 742, 753-55 (2010)). The Fourth Amendment's purpose is to "safeguard the privacy and security of individuals against arbitrary invasions" by the government. *Camara v. Mun. Ct. of S.F.*, 387 U.S. 523, 528 (1967). For purposes of the

Fourth Amendment, a search "occurs when an expectation of privacy that society is prepared to consider as reasonable is infringed. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Generally, a search "requires a warrant supported by probable cause." *Carpenter v. United States*, 585 U.S. 296 (2018) (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). "Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place. *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (internal quotations omitted). An affidavit in support of a search warrant "must contain adequate supporting facts about the underlying circumstances to show that probable cause exists." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996). In addition to being based on probable cause and supported by a sworn affidavit, a valid search warrant must also describe particularly the place of the search and the persons or items to be seized. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004).

The warrant must also be signed by a neutral and detached magistrate [judge]. *Johnson v. United States,* 333 U.S. 10 (1948). Fourth Amendment protection lies in requiring that inferences be drawn from evidence by "a neutral and detached magistrate [judge] instead of being judged by the

officer engaged in the often competitive enterprise of ferreting out crime." *Id.* at 14.

When evaluating a search warrant application, the magistrate judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate [judge] had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 214 (1983). If that substantial basis existed, the court "must uphold that finding even if a 'different magistrate judge might have found the affidavit insufficient to support a warrant.'" *United States v. Stearn*, 597 F.3d 540, 554 (citing *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993)).

In reviewing a magistrate judge's probable cause determination for a search, district courts "conduct only a deferential review of the initial probable cause determination made by the magistrate [judge]." *Stearn*, 597 F.3d at 554 (citing *Gates*, 462 U.S. at 236). "The role of a reviewing court is not to decide probable cause *de novo*, but to determine whether the 'magistrate [judge] had a substantial basis for concluding that probable cause existed.'" *Id*. (citing *Gates*, 462 U.S. at 238).

However, this "does not mean that reviewing courts should simply rubber stamp a magistrate [judge's] conclusion." *United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002) (citing *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983)). The magistrate judge may not rely upon a "wholly conclusory statement" by the affiant and must "conscientiously review the sufficiency of affidavits on which warrants are issued." *Gates,* 462 U.S. at 239.

"[I]n order to claim protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). "[U]nder the reasonable expectation of privacy test, the Fourth Amendment protects against an unreasonable search of an area in which (1) a person exhibits actual, subjective expectation of privacy, and (2) the expectation is one that society is prepared to recognize as reasonable." *United States v. Ellis*, 270 F.Supp.3d 1134, 1140 (N.D. Cal. 2017) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967)). "Under *Katz*, the capacity to claim Fourth Amendment protection does not strictly depend on a property right in the invaded place, but whether the person asserting the claim has a legitimate expectation of privacy." *Id.* (citations omitted).

"Under the exclusionary rule 'evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure.'" *United States v. Lara-Mejia*, 482 F.Supp.3d 281, 293 (M.D.Pa. 2020) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)). "This prohibition also applies 'to the fruits of the illegally seized evidence.'" *Id.* "The rule operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" *Id.* (citations omitted). Generally, "the burden of proof is on the defendant who seeks to suppress evidence." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citation omitted).

## III.    DISCUSSION

The court has jurisdiction over Defendant's motion to suppress under 18 U.S.C. §3231. A criminal defendant brings a pre-trial motion to suppress evidence under Federal Rule of Criminal Procedure 12(b)(3)(C) in an effort "to show that evidence against him or her was unconstitutionally obtained." *United States v. Hernandez*, 2015 WL 5123924, at *4 (M.D.Pa. 2015).

### A. Probable Cause

Defendant first contends that Det. Patton's search warrant application lacked probable cause because there was no substantial basis to conclude

that a search of his residence would contain evidence of wrongdoing, such that the evidence in question was unconstitutionally obtained. (Doc. 43). The court disagrees.

Defendant argues that the magistrate judge did not have a substantial basis to determine probable cause because Det. Patton's application for a search warrant relies upon several "unsupported assumptions." (Doc. 43 at 11). According to Defendant, Det. Patton assumed the following: that Defendant, not his wife, was the person ordering gun parts; that Ms. Garcia was Defendant's wife, not roommate; that Defendant succeeded in assembling a firearm "[d]espite no explanation of how 3D printers work or the difficulty of assembling 3D printed firearms;" that Defendant "assembled an operable firearm at a common area on the first floor of 106 George Avenue" (italics omitted); and that "evidence of firearms or firearm production would be found at 106 George Ave at the time of the search warrant." *Id.* at 11-12. However, these so-called "assumptions" are inferences inherent to police investigation. *See United States v. Cortez*, 449 U.S. 411, 418 (acknowledging that "a trained officer draws inferences and makes deductions . . . that might well elude an untrained person"). Indeed, a finding of probable cause can arise from "the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences

that the officer is permitted to make based upon the officer's specialized training and experiences." *United States v. Yusuf*, 461 F.3d 374, 390 (3d Cir. 2006) (citing to *United States v. Arvizu*, 534 U.S. 266, 275 (2002)).

The court finds that the affidavit prepared by Det. Patton presented a substantial basis to support the magistrate judge's finding of probable cause. As outlined in the affidavit, officers recovered bags containing numerous gun parts from outside the Carriage Stop Plaza, some of which appeared to have been 3D-printed; shipping labels addressed to Defendant; invoices related to firearms addressed to his residence with no named recipient; and invoices and labels addressed to his wife, who resided at the same address. (Doc. 56-2 at 2). This information was more than sufficient to establish probable cause for purposes of the warrant, and did not require the judge to rely upon any "unsupported assumptions."

While the aforementioned, as the court notes, provided sufficient basis for the magistrate judge's finding of probable cause, the court will still address Defendant's additional arguments.

One such argument in furtherance of his contention that the instant search warrant was not granted upon a reasonable finding of probable cause is that multiple "background facts and qualifications that are typical in most affidavits of probable cause . . . are curiously absent here." (Doc. 43 at 12-

13). In particular, Defendant notes that "there is no indication that [Det. Patton] has any training or experience with 3D printers, 3D printed objects, or 3D printed firearms. There is no explanation of what 3D printers are, how they work, or whether it is possible for a lay person to create a firearm with a 3D printer." *Id.* at 9. However, in the affidavit Det. Patton provided a statement of his credentials as follows:

> I am employed by the Luzerne County Drug Task Force (LCDTF) assigned as a Gun Violence Reduction Officer since January 17, 2020. As such, I am tasked with investigating violations of the Pennsylvania Crimes Code including violations of Chapter 61 Firearms and Other Dangerous Articles "Uniform Firearms Act". Your affiant has participated in over 500 illegal firearms trafficking, straw purchases, and other related investigations. These investigations involved hundreds of arrests and the execution of numerous search warrants. Prior to my employment with Luzerne County Drug Task Force (LCDTF) your Affiant served 26 years with the Pennsylvania State Police (PSP) from January 3, 1994 to January 10, 2020. During this timeframe, I participated in hundreds of arrests and search warrants both State and Federal as I was assigned to investigate gangs and violent crime from 1999 until retirement in 2020. For approximately ten years, I was assigned as a Task Force Officer with the FBI Steamtown Safe Streets Task Force in Scranton.

(Doc. 43-1 at 2). The court finds that Det. Patton's credentials are not "curiously absent," but rather thoroughly and extensively laid out in the affidavit. The court does not find that specific information regarding Det. Patton's experience with 3D printers or 3D-printed firearms is necessary to establish a substantial basis for probable cause. Indeed, Det. Patton's credentials warrant a strong presumption that he has relevant experience with respect to 3D-printed firearms. Finally, Defendant's suggestion that the affidavit needs a detailed explanation of how 3D printers work, what they are, and whether a lay person could use one to create a firearm is without merit. He seems to believe that the magistrate judge needed an expert to report on 3D printers in order to find probable cause for a search warrant. However, the nature of 3D printers and their criminal implications are known to many. Furthermore, Det. Patton was applying for a search warrant, not testifying as an expert on 3D printers.  Thus, this argument fails.

Defendant also offers in support of his argument that "there appears to be a crucial typographical error" in the affidavit. (Doc. 43 at 13). Specifically, he notes "Perhaps acknowledging the limitations to his training and experience, it appears that Detective Patton contacted 'Task Force Officer Jeff Ference . . . of the Bureau of Alcohol, Tobacco and Firearms,' presumably to review the evidence. Presumably, Officer Ference had

training and expertise concerning firearms (and possible 3D printed firearms) that went beyond Detective Patton's training and expertise. Presumably, Detective Patton intended to supplement his search warrant affidavit by adding Officer Ference's review and his opinions about the evidence recovered." *Id.* at 10-11. The court is unpersuaded by Defendant's presumptions. Observing the affidavit, the referenced "typographical error" states simply "Further investigation by Task Force Officer Jeff Ference of the [ATF] of the bags with the firearm parts and address labels . . . including inner mechanisms to include triggers." (Doc. 43-1 at 3). This statement is at the end of the affidavit; in its context, Det. Patton is clearly indicating that Officer Ference conducted his own investigation following the culmination of Det. Patton's. *See id.* There is nothing unusual about an officer conferring with fellow officers about a criminal investigation. This interaction is neither improper nor requires some type of "supplemental affidavit". Defendant's presumptions are unwarranted.

Defendant also argues that officers could not reasonably have concluded that he was assembling and/or in possession of firearms because his wife, who had no prior convictions, lived at the same residence. (Doc. 43 at 18). However, two of the invoices related to firearms contained no recipient and were addressed to the residence where Defendant and his wife resided.

- 14 -

*Id.* at 10. Additionally, multiple shipping labels addressed to Defendant were found at the same location. *Id.* As noted, the affidavit of probable cause contains significant evidence tying both Defendant and his residence to the bags seized at Carriage Stop Plaza. Considering that evidence, the magistrate judge reasonably determined that there was a fair probability that Defendant possessed or was manufacturing firearms at his home. Possession, of course, can be joint.

Next, Defendant contends that the evidence supporting the search warrant application was stale. *Id.* at 20. The court disagrees. The "[a]ge of the information supporting a warrant application is a factor in determining probable cause . . . If too old, the information is stale, and probable cause may no longer exist. Age alone, however, does not determine staleness. 'The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant.'" *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993) (internal citations omitted).

Here, the shipping labels seized by police were dated to January 2024. (Doc. 56-4 at 2-8). They were found, along with the gun parts, in March 2024. Defendant does not put forth any evidence that Det. Patton's information at the time of the warrant application was stale other than the passage of time

between the January date and March 2, 2024, when Det. Patton applied for and obtained the search warrant. The court is not persuaded that, at most a lapse of less than two months would render information stale. It would certainly seem unusual that a commercial establishment like a convenient mart, would not dispose of it garbage for two months. The more reasonable inference would be that the garbage is disposed of weekly and the discarded gun parts were placed there within a few days preceding their discovery.

Furthermore, when considering whether information has become stale, courts must consider the type of evidence at issue. *Zimmerman*, 277 F.3d at 434 (citing *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983)). In *United States v. Vosburgh*, the Third Circuit determined that "computers and/or computer equipment . . . is not the type of evidence that rapidly dissipates or degrades. Nor is it the type of property that is usually quickly or continuously discarded." 602 F.3d 512, 529 (3d Cir. 2010). The court further noted that "[t]herefore, the passage of weeks or months here is less important than it might be in a case involving more fungible or ephemeral evidence, such as small quantities of drugs or stolen music." *Id.* Similarly, the evidence sought here—including computers, cellphones, 3D printers, and firearms parts—was infungible. Thus, the information used to obtain the search warrant was sufficiently current.

Finally, Defendant argues that the affidavit of probable cause was not particularized to him. He relies on *United States v. Outlaw*, a recent Third Circuit case that arose from a circumstance factually distinct from the case at hand. 138 F.4th 725 (3d Cir. 2025). There, the court found that officers did not have probable cause to conduct a warrantless arrest during a traffic stop where the officers did not know whether the driver of the vehicle or the passenger was responsible for a marijuana odor emanating from the vehicle. *Id.* at 728. However, *Outlaw* does not apply here for two reasons. First, the situation at hand involves a valid search warrant. Second, the police had evidence that Defendant in particular was involved in the alleged crime. *See* (Doc. 56-2). Therefore, *Outlaw* is inapposite and does not apply.

### B. Particularity

Defendant contends that the search warrant obtained by Det. Patton was both "bare bones" and overbroad, lacking in particularity. (Doc. 64 at 5). The court disagrees.

The Fourth Amendment requires that search warrants "particularly describe the place to be search[ed]" and "things to be seized." U.S. Const. amend. IV. Stated differently, "a warrant may not be issued unless . . . the scope of the authorized search is set out with particularity." *United States v. Fattah*, 858 F.3d 801, 819 (3d Cir. 2019) (quoting *Kentucky v. King*, 563 U.S.

452, 459 (2011)). This requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "In order for a warrant to be invalidated as general, it must 'vest the executing officers with unbridled discretion to conduct an exploratory rummaging through [defendant's] papers in search of criminal evidence." *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents*, 307 F.3d 137, 149 (3d Cir. 2002) (quoting *United States v. Christine*, 687 F.2d 749, 753 (3d Cir. 1982)).

Far from impermissibly general, the search warrant here contained a particularized list of the items to be seized. (Doc. 56-2 at 6). Specifically, the warrant called for the seizure of:

> 3D Printers, any computer units to include smart phones able to be connected to 3D printer, any firearms, any firearm parts, any firearm ammunition, any paperwork connected to firearms or firearm parts, any firearm related equipment able to be connected to a firearm ie; [sic] suppressor or muzzle break, any electronic storage devices able to store data regarding the manufacturing of firearms

*Id.* The court finds that this list of items to be seized contains specific items and categories of items, sufficiently supported by Det. Patton's affidavit of

probable cause. Simply, the list is neither "bare bones" nor overbroad; rather, it is sufficiently particularized.

### C. Execution of the Warrant

Defendant further argues that the seizure of a used target sheet, cryptocurrency, and various identification cards during the search exceeded the scope of the warrant. (Doc. 43 at 21). In response, the Government argues that "[Defendant] presents no argument that the plain view doctrine does not apply with respect to these items." (Doc. 56 at 12). And that, "Even if the plain view doctrine did not apply to one or all of these challenged items, the seizure of an item or items not listed in the warrant does not constitute grounds to suppress evidence properly seized as authorized." *Id.*

Under the plain view doctrine, "During an otherwise lawful search, police may seize items that are in 'plain view' even if the warrant does not list those items." *United States v. Bledsoe*, 449 F.App'x 159, 163 (3d Cir. 2011). However, the police may seize "only when the discovery of the evidence is inadvertent." *Coolidge v. New Hampshire*, 403 U.S. 443, 444 (1971). It is evident here that a used target sheet and ID cards were found during the course of the execution of the search warrant. Indeed, Det. Patton noted that the "used target was also recovered in the vicinity of the gun parts

and the ammunition." (Doc. 56-3 at 6). Further, Defendant does not put forth any evidence to suggest that plain view does not apply here.

Turning to the cryptocurrency, in *United States v. Stabile*, the Third Circuit held "that the plain view doctrine applies to seizures of evidence during searches of computer files, but the exact confines of the doctrine will vary from case to case in a common-sense, fact-intensive manner." 633 F.3d 219, 240-41 (3d Cir. 2011). Here, there is no indication of where exactly officers discovered the cryptocurrency. The following items that were seized could easily have stored the cryptocurrency: a Dell laptop computer, various hard drives and thumb drives, and two cellphones. *Id.* at 2-3. Given that the warrant authorized the seizure of "any electronic storage devices able to store data regarding the manufacturing of firearms," the cryptocurrency information would have been found in plain view pursuant to the lawful seizure and search of one or more of these items. One could reasonably argue that cryptocurrency could be relevant evidence in a case dealing with firearms transactions, especially one in which the defendant is legally prohibited from purchasing firearms. Finally, Defendant does not posit any other theory for how this evidence was discovered. Thus, Defendant's argument that the search exceeded the scope of the warrant fails.

Furthermore, "suppression of *all* evidence seized is not justified unless those executing the warrant acted in flagrant disregard of the warrant's terms." *United States v. Little*, 2014 WL 3694996, at *10 (E.D.Pa. 2014) (quoting *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988)). Thus, even if the seizure of the aforementioned items did exceed the scope of the warrant, the seizure of the rest of the items was still lawful and should not be suppressed.

### D. Good Faith

Even if the court did not find that there was probable cause and sufficient particularity, the good faith exception to the Fourth Amendment's exclusionary rule, which prohibits suppression of "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant," necessitates that the court not exclude the evidence obtained in execution of the search warrant. *United States v. Leon*, 468 U.S. 897, 922; *see also United States v. Caesar*, 2 F.4th 160, 167 (3d Cir. 2021) ("The violation of an individual's Fourth Amendment rights, however, does not always guarantee suppression of evidence derived from an illegal search.") (citing *United States v. Katzin*, 769 F.3d 163, 170 (3d Cir. 2014)). This is because "exclusion is 'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned by an unconstitutional search." *Davis v.*

*United States*, 564 U.S. 229, 236 (2011) (quoting *Stone v. Powell*, 428 U.S. 465, 486 (1976)).

In *United States v. Leon*, the Supreme Court held that "evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate . . . should be admissible in the prosecution's case-in-chief." 468 U.S. at 913. "Indiscriminate application of the exclusionary rule . . . may well 'generat[e] disrespect for the law and administration of justice.'" *Id.* at 908 (quoting *Stone*, 428 U.S. 490). The Court later clarified that the exclusionary rule is only triggered where "police conduct" is "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009).

The Third Circuit has defined four circumstances in which the exclusionary rule does not apply, which are as follows:

> (1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> (2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
>
> (3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

(4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*United States v. Caesar*, 2 F.4th 160, 170 (3d Cir. 2021) (citing *United States v. Tracey*, 597 F.3d 140, 151 (3d Cir. 2010)). Defendant does not contend that the magistrate judge abandoned his or her judicial role. As concluded above, there is no evidence that the search warrant was facially deficient, lacked indicia of probable cause, or failed to particularize the place to be searched and the things to be seized. Furthermore, the court does not agree with Defendant's assertion that the affidavit was recklessly false and "bare bones." The good faith exception therefore would apply and dictate that this evidence be admitted even if the court found contrary to its above conclusions.

## E. Evidentiary Hearing

Defendant has not presented "facts tending to contradict the Government's account and establish a colorable claim for relief." *United States v. Boyd*, 652 F.Supp.2d 546, 551 (D. Del. 2009). The supposed factual disputes put forth by Defendant in his reply brief, namely that Det. Patton had no idea how Ms. Garcia was related to Defendant, pertain to investigative inferences made by the investigating officers. Whether Det. Patton "had relevant experience such that a magistrate [judge] could rely on

his qualifications and allegations" is not a factual dispute requiring a *Franks* hearing, but Defendant's own judgment. The court finds that an evidentiary hearing is neither warranted nor necessary in this matter. It is evident from the undisputed facts presented by both parties that the search warrant in question was granted upon a substantial basis for probable cause.[1]

## IV.    CONCLUSION

For the above reasons, Defendant's motion to suppress evidence, (**Doc. 42**), will be **DENIED** without an evidentiary hearing. The court will not suppress the search of Defendant's residence nor the fruits thereof. An appropriate order shall follow.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: October 6, 2025**
24-170-01

---

[1] The Third Circuit Court of Appeals has held that a district court did not abuse its discretion in denying an evidentiary hearing where the defendant did not offer any version of events contrary to that presented by police, but asserted only that discrepancies in police reports and a warrantless search raised questions about the truthfulness of the reports and the events preceding his arrest. *United States v. Jackson*, 363 F.App'x 208 (3d Cir. 2010).